IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS R. DOVE, | ) | CASE NO. 3:17 CV 1630 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

## Introduction

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Douglas R. Dove, for supplemental security income and disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 24. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Dove, who was 54 years old at the time of the administrative hearing,[11] graduated high school and has an associate's degree in medical assisting.[12] His past relevant employment history includes work as a phlebotomist, an emergency medical technician, a molding machine operator, a material handler, and a robotic welder.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Dove had severe impairments consisting of "status-post remote lumbar microdiscectomy times three, with degenerative changes and multilevel foraminal narrowing; cervical degenerative disc disease; status-post distal bicep tendon rupture and

---

[6] ECF # 11.

[7] ECF # 16 (Commissioner's brief); ECF # 14 (Dove's brief).

[8] ECF # 16, Attachment 1 (Commissioner's charts); ECF # 14, Attachment 1 (Dove's charts).

[9] ECF # 15 (Dove's fact sheet).

[10] ECF # 25.

[11] ECF # 10, Transcript ('Tr.") at 42.

[12] *Id*.

[13] *Id*. at 28.

repair in 2013, with resulting issues involving the lateral antebrachial cutaneous nerve; obesity; and headaches (20 CFR 404.1520(c) and 416.920(c))."[14]

The ALJ made the following finding regarding Dove's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for six hours out of an eight hour workday and can stand and/or walk for four hours out of an eight hour workday. He must have the ability to alternate between sitting and standing every 30 minutes, at his option, for one to two minutes, so long as he is not off-task or has to leave the vicinity of the workstation. The claimant cannot move his head to the extreme ranges of motion, but can move his torso to accommodate. He can never climb ladders, ropes, or scaffolds, or crawl, and can occasionally crouch and stoop, and frequently climb ladders and stairs. He can frequently handle and feel with the dominant right upper extremity. He cannot work in an environment with more than loud exposure as defined by the DOT. The claimant cannot perform direct public service work, but can be in the vicinity of the general public on a frequent basis. He can have frequent contact with coworkers but no team or tandem tasks.[15]

The ALJ decided that this residual functional capacity precluded Dove from performing his past relevant work as a phlebotomist, an EMT, a molding machine operator, a material handler, and a robotic welder.[16]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[14] *Id*. at 22.

[15] *Id*. at 23.

[16] *Id*. at 28.

determined that a significant number of jobs existed nationally that Dove could perform.[17]

The ALJ, therefore, found Dove not under a disability.[18]

**B.      Issues on judicial review**

Dove asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Dove presents the following issues for judicial review:

- The ALJ did not meet her burden at Step Five of the Sequential Evaluation.

- The ALJ failed to state valid reasons for not incorporating the totality of the opinion of treating source Seema Apuri, M.D.

- The ALJ did not properly evaluate Dove's subjective symptoms.[19]

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.      Applicable legal principles**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[17] *Id*.

[18] *Id*. at 29.

[19] ECF # 14 at 1. While Dove's brief uses the word "credibility," Social Security Ruling ("SSR") 16-3p eliminated use of that term. *See* SSR 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304.

Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.     The treating source rule*

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

---

[23] 20 C.F.R. § 404.1527(c)(2). The Court notes that the regulatory provisions governing disability insurance benefits and supplemental security income are substantially similar; therefore, the Court may cite to one or both of these programs interchangeably within this order.

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003)).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.* (citing and quoting 20 C.F.R. § 404.1527(d)(2)). This provision is now found at 20 C.F.R. § 404.1527(c)(2). *See* SOCIAL SECURITY ADMINISTRATION, HOW WE COLLECT AND CONSIDER EVIDENCE OF DISABILITY, 77 Fed. Reg 10651, 10656 (Feb. 23, 2012).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(c)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(c)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate

---

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

-8-

standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather, it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[46] The treating source's

---

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 404.1527(c)(2)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

---

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt

---

[54] *Rogers*, 486 F.3d at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 404.1527(c)(2)(i)-(ii), (3)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(c)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

### 3. *Subjective symptom evaluation*

---

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

As the Social Security Administration has recognized in a policy interpretation ruling on evaluating symptoms in disability claims,[70] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms will be considered with other relevant evidence in deciding disability:

> If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. . . . We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and other evidence.[71]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[72]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[73]

---

[70] SSR16-3p, 2017 WL 5180304.

[71] *Id.* at *6.

[72] 20 C.F.R. § 416.929(c)(2).

[73] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 988-89 (N.D. Ohio 2003).

-14-

As a practical matter, in the evaluation of subjective symptoms, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[74] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his or her claim.

The regulations set forth factors that the ALJ should consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[75]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents evidence of these factors consistent with other evidence in the record, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

---

[74] 20 C.F.R. § 404.1529(c)(3).

[75] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

Importantly, evaluation of subjective symptoms is not an assessment of the claimant's character or truthfulness.[76] Instead, the ALJ's examination must focus on "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the [claimant]'s symptoms and given the [ALJ]'s evaluation of the [claimant]'s symptoms, whether the intensity and persistence of the symptoms limit the [claimant]'s ability to perform work-related activities . . . ."[77] The Social Security ruling makes clear that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be *clearly articulated* so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[78]

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. A court may not disturb the ALJ's "analysis and the conclusions drawn from it – formerly termed a credibility determination –" absent compelling reason.[79]

## Analysis

This case presents three issues, which the Court restates here as follows:

---

[76] SSR 16-3p at *11.

[77] *Id.*

[78] SSR 16-3p at *10 (emphasis added).

[79] *Robinson v. Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 WL 2437560 (E.D. Mich. May 8, 2018) (citing *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)), *report and recommendation adopted by Robinson v. Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 WL 2431689 (E.D. Mich. May 30, 2018).

(1) The RFC limited Dove to light work, lifting 20 pounds occasionally and 10 pounds frequently. Dove argues that the opinion of his treating source, Dr. Apuri, which was given great weight, provided for 10 pounds occasionally. At that limitation, Dove would grid out.

(2) The ALJ, acknowledging the standards for evaluating Dove's statements regarding his impairments and their impact on his ability to perform work activity set out in Social Security Ruling ("SSR") 16-3p, found Dove's statements "somewhat consistent with the medical evidence of record." Dove argues that this does not satisfy the requirements of SSR 16-3p.

(3) At Step Five, in response to the hypothetical incorporating the RFC finding, the VE testified that Dove could perform work as a packager with 100,000 jobs existing nationally. Dove argues that the Step Five determination cannot be based on jobs existing for one occupation only.

The Court will address each of these arguments in turn.

**A.      Treating source**

Treating source Dr. Apuri completed a RFC form that noted generally Dove's limitations in lifting/carrying, standing/walking, and sitting.[80] It incorporated by reference a physical therapy evaluation, which Dr. Apuri cosigned with the physical therapist.[81] This evaluation noted no postural limitations, the ability to continuously sit and frequently stand and walk, the ability to occasionally lift and carry 30 pounds, and good ability to carry out secondary work characteristics.[82] There is a note that "back pain increased with lifting and carrying (required to lift floor < - > waist) if weight was greater than 10 lbs."[83] The ALJ

---

[80] Tr. at 488-89.

[81] *Id.* at 490-93.

[82] *Id.*

[83] *Id.* at 492.

gave this "opinion" great weight as a treating source opinion.[84] She noted some positive findings therein but found that the opinion supported the ability to perform a limited range of light work.[85]

Because Dr. Apuri referred Dove for the functional capacity evaluation by the physical therapist and ultimately signed the report of that evaluation, the ALJ properly treated it as a treating source opinion. The opinion contains multiple findings that support the RFC. The most "positive finding" for Dove in this opinion is the reference to the pain experienced in lifting over 10 pounds. The degree of pain and its limiting effects are not reflected elsewhere in the report.[86] The ALJ properly discussed the opinion and weighed it in context. This report and the ALJ's articulation regarding it does not constitute error mandating a remand.

**B.    SSR 16-3p**

The ALJ cited to SSR 16-3p and discussed the evidence in light of the finding that Dove's statement about his impairments were "somewhat inconsistent with the other medical evidence of record."[87]

Here, the most significant evidence in support of the limitation to sedentary work is Dr. Apuri's opinion. Although Dr. Apuri had the opportunity to opine sedentary work on the

---

[84] *Id.* at 26.

[85] *Id.*

[86] *Id.* at 490-93.

[87] *Id.* at 27.

form in which she incorporated the physical therapy evaluation by reference,[88] she did not do so. The physical capacity test performed by the physical therapist is ambiguous as to lifting capacity.[89] And the Court notes that in essence it is a consultive examination performed by a non-medical source that lasted only 48 minutes.[90] There is no indication that Dr. Apuri was present for the testing, nor in the normal course would she be expected to attend.

On the other hand, the consultive examiner and the state agency reviewing physician on reconsideration opined light work consistent with the RFC and did so expressly, unlike Dr. Apuri.[91]

This does not mean that there was no evidence supporting Dove's challenge to the RFC; indeed, it is arguable that Dove's position may have the support of substantial evidence. If substantial evidence exists to support the Commissioner's decision, as it does here, that decision falls within the "zone of choice" in which the Commissioner must be affirmed.[92]

---

[88] *Id.* at 488.

[89] *Id.* at 492.

[90] *Id.* at 493.

[91] *Id.* at 27. While on reconsideration the RFC findings in the Disability Determination Explanation changed to reflect a capacity for light work (*cf., e.g.*, *id.* at 94 with *id.* at 116), the specific RFC remained medium and the representative jobs remained the same. *Cf. id.* at 118 with *id.* at 128. This appears to be a typographical error given the changed RFC assessment.

[92] *Buxton v. Halter*, 246 F.3d. at 772.

**C. Step Five**

At Step Five, Dove challenges the decision to find a significant number of jobs in the national economy based on the VE's identification of one occupation with 100,000 jobs nationally. As the Commissioner's brief sets out,[93] there are multiple precedents supporting a Step Five finding based on one occupation with a significant number of jobs.[94] That the ALJ elicited the requisite testimony of the VE through leading questions is not error. The ALJ does characterize this one occupation as "representative."[95] The VE did not testify to representative.[96] Even if this matters, it would be harmless error in light of the authorities supporting the finding based on one occupation.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Dove had no disability. Accordingly, the decision of the Commissioner denying Dove's applications for disability insurance benefits and supplemental security income is affirmed.

Dated: July 24, 2018                  s/ William H. Baughman, Jr.
                                                               United States Magistrate Judge

---

[93] ECF # 16 at 16-17.

[94] *See, e.g., Free v. Comm'r of Soc. Sec.*, 690 Fed. App'x 394, 396 (6th Cir. 2017).

[95] Tr. at 29.

[96] *Id.* at 82.